UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANTWONIQUE MCKENZIE, | § § | |
| Plaintiff, | § § | |
| v. | § § | SA-17-CA-232-HJB |
| TRESSA MCKENZIE, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OF DECISION,
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A bench trial was held in this case on March 28, 2019. The Court exercises jurisdiction in this case pursuant to the consent of the parties. *See* 28 U.S.C. § 636(c). Pursuant to Federal Rule of Civil Procedure 52(a), the Court enters this Memorandum of Decision, Findings of Fact and Conclusions of Law. For the reasons set out below, the Court finds in favor of Defendant Tressa McKenzie in this matter.

### I.   Background.

This case began as an interpleader action brought by Dearborn National Life Insurance Company ("Dearborn"), pursuant to Federal Rule of Civil Procedure 22, 28 U.S.C. § 1335, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (*See* Docket Entry 1, at 1.) Dearborn had issued a term life insurance policy ("the Policy") to Aaron McKenzie through his employer, Star Shuttle, Inc. ("Star Shuttle"). (*Id.*) The death benefit under the policy was $80,000. (Docket Entry 36, at 3.)

After Aaron McKenzie's death, both Plaintiff and Defendant filed claims seeking life insurance benefits. In light of the parties' dispute, Dearborn filed this interpleader action. Both

Plaintiff and Defendant filed answers making claims to the proceeds. (Docket Entries 7, 8.) The Court approved Dearborn's interpleader request, dismissing it from the case and ordering that proceeds from the Policy (less costs and reasonable attorney's fees) be placed in the registry of the Court. (Docket Entry 12.) Accordingly, the amount of $77,100 was placed in the Court's registry on July 31, 2017. (*See* Docket Entry 14.)

Both Plaintiff and Defendant testified at the trial before the Court. Additionally, three defense exhibits were admitted by stipulation. (*See* Docket Entries 53, 54.)

## II. Findings of Fact.

The following findings include findings adapted from the parties' stipulations at trial (*see* Docket Entry 53) and proposed findings (Docket Entries 56 and 57), as well as the Court's own findings based on the trial evidence:

1. Antwonique McKenzie is Aaron McKenzie's natural born daughter from his previous marriage to Latasha Nicole Johnson (a/k/a Latasha Brown). The marriage ended in divorce at some time before July 26, 2009.

2. Tressa McKenzie and Aaron McKenzie were married on July 26, 2009, and the marriage was never subject to divorce or annulment.

3. Aaron McKenzie began working for Star Shuttle on October 12, 2009, and worked there until November 11, 2016.

4. On or about May 20, 2016, Aaron McKenzie purchased the Policy from Dearborn through Star Shuttle. A third party, Sun Life Financial, acted as the enroller for the Policy. The Policy states that it is an "employee welfare benefit plan" as defined by ERISA. (Trial Ex. 2; Docket Entry 31-2, at 46.)

2

5. Premiums for the insurance were deducted out of Aaron McKenzie's employment paycheck. As Aaron McKenzie purchased the Policy during his marriage to Tressa McKenzie, he used community funds to pay the premiums of the Policy.

6. From approximately April to December 2016, Tressa and Aaron McKenzie were living apart.

7. With regard to naming a beneficiary for death benefits, the Policy provides:

*Who will receive Your Life Insurance Benefits?*

Your beneficiary designation must be made on a form which *We*[1] provide or on a form accepted by *Us*. If two or more beneficiaries are named, payment of proceeds will be apportioned equally unless *You* had specified otherwise. The *Policyholder* may not be named as beneficiary. Unless *You* provide otherwise, if a beneficiary dies before *You*, *We* will divide that beneficiary's share equally between any remaining named beneficiaries.

* * *

**Facility of Payment**

If no named beneficiary survives *You* or if *You* do not name a beneficiary, *We* will pay the amount of insurance:

1. to *Your* spouse, if living; if not,

2. in equal shares to *Your* then living natural or legally adopted children, if any; if none,

3. in equal shares to *Your* father and mother, if living; if not,

4. in equal shares to *Your* brothers and/or sisters, if living; if not,

5. to *Your* estate.

(Trial Ex. 2; Docket Entry 31-2, at 56 (italics and boldface in original)).

---

[1] According to the Policy, "We, Our and Us means Dearborn," and "You, Your and Yours" refer to "the eligible Employee to whom this Certificate is issued and whose insurance is in force under the terms of the Policy"—in this case, Aaron McKenzie. (*See* Trial Ex 2; Docket Entry 31-2, at 76.)

3

8. For purposes of the above Policy provisions, the term "form" is not defined. However, Dearborn's "Statement of ERISA Rights," which was submitted in evidence, indicates that a "form in writing" may include electronically submitted documents. (Trial Ex. 2; Docket Entry 31-2, at 85.)

9. According to testimony in a deposition upon written questions given by Star Shuttle records custodian Christina Carmen Casas, Antwonique McKenzie was the designated primary beneficiary under the policy. The only source Casas could identify for this information was a spreadsheet entry in Star Shuttle records indicating that Antwonique McKenzie was the beneficiary. (*See* Trial Ex. 2; Docket 33-1, at 8, 11–12, 19.)

10. Aaron McKenzie died on January 22, 2017.

11. Dearborn received two competing claims for death benefits under the Policy: one claim from Tressa McKenzie, and another from Antwonique McKenzie.

12. After Aaron McKenzie died, Star Shuttle submitted to Dearborn the spreadsheet showing the beneficiary designation of Antwonique McKenzie.

13. When presented with the spreadsheet designation, Dearborn asked Star Shuttle for a designation form. According to an email written by Casas to Shea Wilson (apparently a representative for the third-party enroller Sun Life Financial), Dearborn asked to confirm "that there [was] no signed documentation that ties the beneficiaries on the spreadsheets to the employee," because "Dearborn does not see any beneficiary information and can only process off of next of kin, which would be his spouse if he had one." (Trial Ex. 1; Docket Entry 33-1, at 44.)

14. In response to the request from Casas, Wilson confirmed that there was no designation form. Casas then instructed Wilson to advise Dearborn that "there is not an enrollment form because employees met with enrollers and enrolled electronically. The enrollment team only provided the beneficiary spreadsheet and confirmation statement to employees." (*Id.* at 49.)

15. An e-mail from Casas to Wilson also suggested that, in Dearborn's view, if an employee is married and would like to list someone other his or her spouse as a beneficiary, the employee would "need to get the spouse to sign [a] waiver [form]." (*Id.* at 60.) Wilson confirmed that, since the enrollment was done online, there was no form in which Tressa McKenzie waived her rights to be the beneficiary and allowed Antwonique McKenzie to be the beneficiary. (*Id.*) The parties stipulated that no such form exists. (Docket Entry 53, at 1.)

16. When no form was found in Star Shuttle's records, Dearborn wrote to Tressa and Antwonique McKenzie explaining that, if it could not "determine who the beneficiary is," and the parties could not reach an agreement, it would let "the courts decide." (*See, e.g.,* Trial Ex. 2; Docket Entry 31-2, at 26.) Tressa McKenzie agreed to an equal division of the Policy proceeds; Antwonique McKenzie did not. Accordingly, this action ensued.

5

III. **Conclusions of Law.**

1. Venue is proper, and this Court has jurisdiction to decide the matters in dispute. *See* 28 U.S.C. § 636(c); 29 U.S.C. § 1132(e).

2. For employee welfare benefit plans such as the one in this case, ERISA supersedes "any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, state law causes of action are barred if the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; such "claims directly affect the relationship between the traditional ERISA entities" including "participants and beneficiaries." *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994) (quoting *Mem. Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)).

3. Under ERISA, a beneficiary of a plan is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit." 29 U.S.C. § 1002(8).

4. Under ERISA, the plan administrator is obliged to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the applicable provisions of ERISA. *See* 29 U.S.C §1104(a)(1)(D). "ERISA provides no exemption from this duty when it comes time to pay benefits." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009). In this case, no argument has been made, and there is no basis upon which to conclude, that the Policy at issue is inconsistent with ERISA.

5.  The Policy states that the participant may designate a beneficiary "on a form which [Dearborn] provide[s] or on a form accepted by [Dearborn]." (Docket Entry 36-1, at 143.)

6.  Aaron McKenzie did not submit a "form"—his enrollment and designation were processed electronically online and recorded in a spreadsheet maintained by a third-party enroller. Nevertheless, the Court concludes that, at least in some circumstances, an electronic designation can qualify as a "form" for purposes of the Policy. The term "form" is not defined in the policy, and Dearborn, in the statement of ERISA rights provided to policyholders, indicates that written "forms" can include electronically filed documents.

7.  Although electronic forms can qualify under the Policy in some circumstances, the Court concludes that the designation of Antwonique McKenzie on a spreadsheet created by a third-party enroller does not qualify as a designation form. The Policy clearly requires that in whatever format, the form must be one Dearborn "provide[s]" or one that is "accepted by" Dearborn. There is no evidence before the Court that Dearborn provided the electronic spreadsheet designation; to the contrary, the evidence makes clear that a third-party enroller provided it. Moreover, a clear preponderance of the evidence demonstrates that the spreadsheet designation was not "accepted by" Dearborn. To the contrary, according to the stipulated evidence, Dearborn informed Star Shuttle that the spreadsheet designation was not acceptable: it explained that it generally required "signed documentation that ties the beneficiaries on the spreadsheets to the employee," and indicated that, absent such

documentation, it could "only process off of next of kin, which would be [the employee's] spouse if he had one." (Trial Ex. 1; Docket Entry 33-1, at 44.)

8. The Court's conclusion that Dearborn did not accept the electronic spreadsheet as a designation form is bolstered by Dearborn's conduct after receiving evidence of the spreadsheet. It advised the competing claimants that, if it could not "determine who the beneficiary is," it would, absent an agreement between the parties, let "the courts decide"; subsequently, it presented this case to the Court by way of interpleader. If Dearborn had accepted the spreadsheet designation, it would not have had to advise the claimants as to procedures when no determination is made. Nor would it have had to present the case to this Court.

9. Given the clear requirements of the Policy, any testimony from Antwonique or Tressa McKenzie as to Aaron McKenzie's intentions regarding his beneficiary is not legally determinative. Unless those intentions were expressed in a form provided by or accepted by Dearborn, they are not controlling. For this reason, the Court has not relied upon the testimony of either Antwonique or Tressa McKenzie in making its determination here.

10. Similarly, the deposition testimony of Star Shuttle employee Casas as to the purported identity of the designated beneficiary under the Policy is not determinative. The question before the Court is whether the designation was accepted by Dearborn, not Star Shuttle.

11. Plaintiff argues, without citing authority, that the Court has discretion to determine that the electronic spreadsheet was in "substantial compliance" with the terms of the

Policy. (*See* Docket Entry 56, at 6.) The "substantial compliance" rule is inapposite to Plaintiff's argument. That rule applies not to the Court, but to persons administering an ERISA plan. *See White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 769 (5th Cir. 2018). Under that rule, technical compliance by the plan administrator is not required if the purposes of ERISA are met. *See id.*

12. Moreover, if the "substantial compliance" rule is applied to this case, it supports Defendant's position, not Plaintiff's. The rule would require the Court to determine whether, in refusing to accept the electronic spreadsheet and instead "letting the Court decide," Dearborn substantially complied with ERISA. It would likewise have to determine whether Dearborn substantially complied with ERISA by requiring a signed consent form from a spouse before accepting a different beneficiary designation, even if the Policy did not expressly require such consent. *Cf.* 29 U.S.C. § 1055(c)(2) (requiring consent of spouse for preretirement survivor annuity plan). The Court concludes that either such determination by Dearborn would be protected under the "substantial compliance" rule.

13. Because Dearborn neither provided nor accepted the electronic spreadsheet as a form designating a beneficiary, Aaron McKenzie did not "name a beneficiary" under the terms of the Policy. Accordingly, the Policy requires that the insurance benefit be paid to Aaron McKenzie's "spouse, if living."

14. Tressa McKenzie was Aaron McKenzie's spouse at the time of his death; accordingly, she is entitled to the death benefit under the Policy.[3]

15. At trial, the parties disputed who bore the burden of persuasion in this case. Neither party has presented legal authority to support its position. However, given that the relevant evidence was admitted by stipulation, and that the clear preponderance of evidence shows that Dearborn did not accept a form designating Antwonique McKenzie as the beneficiary, the Court concludes that its determination would be the same regardless of who bore the burden at trial.

### IV. Conclusion.

Because Antwonique McKenzie was not the properly designated beneficiary of the Dearborn Policy, the benefits of the Policy must be paid to Aaron McKenzie's surviving spouse, Tressa McKenzie. Accordingly, Plaintiff's claim for declaratory judgment under 28 U.S.C. § 2201(a) is **DENIED**, and declaratory relief under that statute is **GRANTED** to Defendant. The Clerk of Court is **DIRECTED** to pay to Defendant $77,010, as deposited into the Court's registry on July 31, 2017. The Clerk of Court shall prepare a judgment consistent with this decision.

It is so **ORDERED**.

**SIGNED** on April 9, 2019.

Henry J. Bemporad
United States Magistrate Judge

---

[3] Although the Court did not rely on Tressa McKenzie's testimony to reach this conclusion, it notes that she testified, under oath, that she agreed with Aaron McKenzie on his deathbed to distribute the benefits from the life insurance policy in accordance with his wishes. Whether Tressa McKenzie now acts in accordance with her husband's deathbed wish is not a legal matter for the Court; it is a matter of conscience that she must decide for herself.